UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| Anne Loring Cash,<br><br>        Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill,<br><br>        Defendant. | Case No.: 17-cv-00041-W-JLB<br><br>**Report and Recommendation**<br><br><br><br>[ECF Nos. 12, 15] |
|---|---|

  This matter is before the Court on cross-motions for summary judgment. (ECF Nos. 12, 15.) Plaintiff Anne Loring Cash, a now fifty-nine-year-old woman who suffers from fibromyalgia, and who last worked as an accountant, moves under 42 U.S.C. § 405(g)[1] for judicial review of the Commissioner of Social Security Nancy A. Berryhill's ("Commissioner") final decision denying her claim for a period of disability and disability insurance benefits.

  This Report and Recommendation is submitted to United States District Judge Thomas J. Whelan pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the

---

[1] "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . brought in the district court of the United States . . . . The court shall have the power to enter, upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g) (2015).

1

United States District Court for the Southern District of California. After careful review of the moving and opposing papers, the administrative record, the facts, and the applicable law, the Court hereby RECOMMENDS that Plaintiff's motion for summary judgment (ECF No. 12) be GRANTED IN PART AND DENIED IN PART. The Court further RECOMMENDS that the Commissioner's cross-motion for summary judgment affirming the Administrative Law Judge's ("ALJ") decision (ECF No. 15) be DENIED and the case be REMANDED for further administrative proceedings.

## I. BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act on December 13, 2012, alleging disability commencing August 1, 2011.[2] (ECF No. 9-5 at 2-3.)[3] The Commissioner denied the claims by initial determination on May 22, 2013. (ECF No. 9-4 at 6.) Plaintiff requested reconsideration of the initial determination on June 3, 2013. (*Id.* at 11.) The Commissioner denied reconsideration on October 3, 2013. (*Id.* at 12-17.) Plaintiff requested a de novo hearing before an ALJ on November 7, 2013. (*Id.* at 18-19.) The Commissioner granted this request and appointed an ALJ. (*See id.* at 47-51.) On May 14, 2015, Plaintiff, her attorney, and a vocational expert appeared before the appointed ALJ, Keith Dietterle. (ECF No. 9-2 at 30.) In a decision dated July 23, 2015, the ALJ issued an unfavorable decision and found Plaintiff was not disabled through the last date insured. (*Id*. at 18-25.)

Thereafter, the Social Security Administration Appeals Council denied Plaintiff's request for review of the ALJ's unfavorable decision, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 2-4.) Plaintiff then commenced this instant action for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[2] *See* 42 U.S.C. § 423 (Disability insurance benefit payments); *see also id.* at §§ 416(i) (defining "period of disability"), 423(d)(1) (defining "disability" for purposes of entitlement to a period of disability or to disability insurance benefits).

[3] All page number citations in this Report and Recommendation refer to the page numbers generated by the CM/ECF system.

## II. STANDARD OF REVIEW

The Social Security Act allows for unsuccessful applicants to seek judicial review of the Commissioner's final agency decision.[4] The scope of judicial review, however, is limited. The Commissioner's final decision should not be disturbed unless: (1) the ALJ's findings are based on legal error; or (2) the ALJ's determinations are not supported by substantial evidence in the record as a whole.[5] Substantial evidence is "more than a mere scintilla, but may be less than a preponderance."[6] Substantial evidence is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion."[7]

In making this determination, the Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.[8] Where the evidence can reasonably be construed to support more than one rational interpretation, the Court must uphold the ALJ's decision.[9] This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.[10]

## III. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[11] the ALJ first found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of August 1, 2011 through her date last insured of June 20, 2015. (ECF No. 9-2 at 20.) The ALJ then found that through the date last insured, Plaintiff had the following severe impairment: fibromyalgia. (*Id.*) In making this determination, the ALJ explained that Plaintiff also had the following conditions that do not meet the criteria for severe

---

[4] *See* 42 U.S.C. §§ 405(g), 1383(c)(3).
[5] *See Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000).
[6] *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001).
[7] *Id.*; *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).
[8] *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).
[9] *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).
[10] *See Lewis*, 236 F.3d at 509.
[11] *See* 20 C.F.R. § 404.1520.

impairments: lumbar disc disease, depression, and anxiety. (*Id*. at 20-21.) Next, the ALJ found that Plaintiff does not have an impairment or a combination of impairments that meet the severity required to stop analysis at step three and award benefits. (*Id.*)

Before considering step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light exertional work[12] with limitations as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to sit for six hours total out of an eight hour workday; stand or walk for six hours total out of an eight hour workday; occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; occasionally climb stairs, ladders, scaffolds, and ropes; occasionally balance, stoop, kneel, crouch and crawl; no concentrated exposure to unprotected heights and dangerous or fast moving machinery.

(*Id*. at 21-24.) The RFC assessed did not include any mental limitations due to fibromyalgia. At step four, the ALJ compared the RFC assessed to the demands of Plaintiff's past relevant work as an accountant. (*Id*. at 24-25.) In doing so, the ALJ relied on the testimony of the vocational expert to determine whether Plaintiff could work as an accountant. (*Id*.) The ALJ concluded at step four that through the date last insured, Plaintiff "was capable of performing past relevant work as an accountant," and therefore, "was not under a disability, as defined in the Social Security Act." (*Id*.)

## IV. DISCUSSION

Plaintiff moves for summary judgment on the issue of whether the ALJ failed to provide clear and convincing reasons to reject Plaintiff's subjective complaints. (ECF No. 12 at 4.) Plaintiff argues that the ALJ's credibility determination cannot stand for the

---

[12] As defined by the Code of Federal Regulations, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

4

following three reasons: (1) the ALJ "essentially discounted" the severity of Plaintiff's fibromyalgia due to a lack of objective evidence despite the fact that there are no objective tests for the severity of fibromyalgia; (2) the ALJ erroneously found that Plaintiff's daily activities, including the management of four rental properties, were inconsistent with her alleged limitations; and (3) the ALJ erroneously found that Plaintiff's course of treatment was inconsistent with total disability without identifying any other preferred treatment modalities outside of medication. (ECF No. 12 at 5-6.)

The Commissioner opposes Plaintiff's motion and cross-moves for summary judgment, arguing the ALJ provided a valid basis for finding Plaintiff not fully credible and his reasons were supported by substantial evidence. (ECF No. 15.)[13] For the reasons explained below, the Court concludes that the ALJ did not articulate clear and convincing reasons to discredit Plaintiff's statements concerning the intensity, persistence and limiting effects of her fibromyalgia-related symptoms. The Court further concludes remand is appropriate.

### A. Legal Standard

If an ALJ finds that a claimant's testimony as to the severity of her symptoms and impairments is unreliable, the ALJ is required to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."[14] As outlined by the Ninth Circuit, there is a two-step

---

[13] On reply, Plaintiff carelessly presents the Court with the following language that appears to be pulled from another case that is not presently before this Court:
> Anne Cash filed her motion for summary judgment demonstrating that the Commissioner had committed error law in that the ALJ improperly rejected the only synthesis of the record as a whole from the expert that the ALJ called to the hearing for the purpose of clarifying the record. The Commissioner has filed a motion for summary judgment contending that the record as a whole contains substantial evidence to support the proposition that Gloria Ramirez is not suffering from a disability as that term is defined in the Social Security Act."

(ECF No. 18 at 3.) In this case, there was no expert called to clarify the record and Plaintiff's name is not Gloria Ramirez.

[14] *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

process an ALJ is to employ to assess subjective symptom testimony.[15] "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"[16] Absent such evidence, subjective symptom testimony may be disregarded.[17] Second, if the ALJ determines that the claimant meets this threshold, and there is no evidence of malingering, "the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying '*which* testimony [the ALJ] found not credible' and explaining '*which* evidence contradicted that testimony.'"[18]

At issue here is the second step in the ALJ's two-step process of assessing subjective symptom testimony. The Commissioner does not argue that there was evidence of malingering and that a lesser standard should consequently apply. As a result, the Court will apply the "specific, clear and convincing" standard to the ALJ's adverse credibility determination.[19]

To support a finding that the claimant was not credible, the ALJ must "point to specific facts in the record which demonstrate" that the claimant's symptoms are less severe than she claims.[20] The ALJ must make specific findings stating which "testimony is not credible and what evidence suggests the complaints are not credible."[21] ***When discounting fibromyalgia-related symptoms***, the ALJ must articulate what evidence suggests the complaints are not credible in light of fibromyalgia's unique symptoms and

---

[15] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).
[16] *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).
[17] *Tommasetti*, 533 F.3d at 1039; *see also* 42 U.S.C. § 423.
[18] *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017) (quoting *Brown–Hunter v. Colvin*, 806 F.3d 487, 489, 494 (9th Cir. 2015)); *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).
[19] *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (applying "clear and convincing" standard where the government did not argue that a lesser standard should apply based on evidence of malingering).
[20] *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).
[21] *Dodrill*, 12 F.3d at 918.

diagnostic methods.[22] The ALJ can consider the following when assessing the claimant's credibility: (1) her reputation for truthfulness; (2) inconsistences in either her testimony or between her testimony and her conduct; (3) her daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of her condition.[23]

The reviewing court must bear in mind that it should not "second-guess" an ALJ's credibility determination.[24] Accordingly, where an ALJ's credibility determination is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting the claimant's testimony are improper.[25] However, "[t]he clear and convincing standard is the most demanding required in Social Security cases,"[26] and thus, the standard "is not an easy requirement to meet."[27]

Courts may only review the ALJ's articulated rationale, and "[i]f the [ALJ's] decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for remand."[28] The Ninth Circuit has sympathized with the "large volume of disability cases that the agency must adjudicate," but "each case represents a citizen's claim of serious disability," and accordingly, courts should not take lightly their responsibility

/ / /
/ / /
/ / /
/ / /

---

[22] *Revels v. Berryhill*, 874 F.3d 648, 662, 666-67 (9th Cir. 2017) (reversing the district court's order affirming the denial of supplemental security income and disability insurance benefits because "the ALJ did not consider [the claimant] Revels' testimony in light of her fibromyalgia diagnosis").
[23] *Thomas,* 278 F.3d at 958-59.
[24] *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)); *see also Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984).
[25] *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008).
[26] *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).
[27] *Garrison v. Colvin*, 759 F.3d 995, 1105 (9th Cir. 2014).
[28] *Barbato v. Comm'r of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (quoting *Williams v. Bowen*, 664 F. Supp. 1200, 1207 (N.D. Ill. 1987)).

under 42 U.S.C. § 405(g).[29] Courts, in their reviewing authority, "should not be forced to speculate" the reasoning behind the ALJ's findings.[30]

Consequently, the Court must assess whether the ALJ provided clear and convincing reasons for discrediting Plaintiff's testimony concerning her subjective symptoms that are supported by substantial evidence in the record.

### B. Plaintiff's Symptom Allegations

On December 13, 2012, Plaintiff Anne Loring Cash completed her Application for Disability Insurance Benefits in which she alleges that, as of August 1, 2011, she has been unable to work due to her "disabling condition." (ECF No. 9-5 at 2-3.) In a Disability Report, which she also completed on December 13, 2012, Plaintiff states that she became unable to work as a certified public accountant due to "fibromyalgia, depression, anxiety, back, [and] carpal tunnel," and that these conditions cause her pain and other symptoms for which she takes medication. (ECF No. 9-6 at 4-9.)

On February 7, 2013, Plaintiff completed a Function Report. In the Function Report, Plaintiff provides the following narrative describing how her conditions limit her ability to work:

> I was diagonosed [*sic*] with fibromylgia [*sic*] in 1998 and was fine until about 2010 when the pain started kicking in beyond what I could bear. The first 10 years I was given flexeril and vicodin for the pain since it was only an occasional flair up. Now I have been on Savella and Lyrica for about 3 years and they have helped. I am also on Lexapro for the depression and anxiety. However, the fibromylgia [*sic*] limits my ability to work due to the constant pain in my body and the fog[31] in my brain. I have constipation and bloating most of the time now . . . not sure if

---

[29] *Lewin v. Schweiker*, 654 F.2d 631, 634-35 (9th Cir. 1981) (quoting *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974)).
[30] *Bunnell*, 947 F.2d at 346 (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also Lewin*, 654 F.2d at 635 ("It is incumbent upon the examiner to make specific findings—the court may not speculate as to his findings." (quoting *Baerga*, 500 F.2d at 312)).
[31] "Fibro fog" is a commonly reported symptom of fibromyalgia, and generally includes difficulty with concentration and memory. *See* SSR 12-2P, available at 2012 WL 3104869, at *3.

that is because of the medications or fibro. I am tired all the time and I have migraines regularly. I am very sensitive to ordors [*sic*] and lights. I dry heave extremely easy now especially for a person that had a cast iron stomach and never threw up! It is impossible to concentrate or remember things. I was a CPA, but I can't remember tax laws long enough to prepare returns. I was constantly looking things up that should have been simple for a CPA of 30+ years! I let my CPA license go last year because of the high cost for the license and continuing education. There are times I can't hold a pen much less type on a computer. I have been in counseling for the last 3 years due to the depression and anxiety caused by my lack of sleep, pain and brain fog. I thought I was getting dementia my brain fog was so bad. I was diagnosed [*sic*] bi-polar for 25+ years and on medication for it only to find out last year I'm not bi-polar, thank goodness. However, I managed to work regardless of that. Now, they say [] it's a Generalized Anxiety Disorder . . . which I am dealing with very well now thanks to Cognitive Behaviour Training!

(ECF No. 9-6 at 19-20.)

With respect to her mental limitations and symptoms, Plaintiff checks off boxes in her Function Report reflecting that her conditions affect memory, completing tasks, concentration, understanding, following instructions, and getting along with others. (*Id*. at 26.) Plaintiff states that it takes a long time to complete simple tasks because she "can't seem to stay on track" and that her conditions make it difficult to both fall and stay asleep, and as a result, she gets "maybe 3 to 4 hours maximum at a time." (*Id*. at 22.) Further, Plaintiff claims that she sometimes forgets to take medicine and needs to keep notes in order to remember to take care of personal needs. (*Id*. at 23.) She follows written instructions "Pretty well!" but can only pay attention for "minutes" before her mind wanders. (*Id*. at 26.) Plaintiff states she handles money, but that in doing so, she is not as sensible and is much more impulsive due to her conditions. (*Id*. at 24-25.) Plaintiff also reports that she is "grumpy a lot," has "no patience anymore," and has "minimal concentration ability." (*Id*. at 26.) Plaintiff claims that stress "makes everything esp[ecially] pain & brain worse." (*Id*. at 27.)

With respect to her physical limitations and symptoms, Plaintiff checks off boxes in her Function Report reflecting that her conditions affect lifting, squatting, bending, standing, reaching, kneeling, and using hands. (*Id.* at 26.) Plaintiff states she shops weekly for 1-2 hours and gets around "pretty well" on a weekly basis, but less frequently compared to pre-2010. (*Id.* at 24-25.) However, Plaintiff also reports that she has changed her social activities to "[a]lmost NO physical activity for 3 years now." (*Id.* at 26.) Plaintiff goes on to report that "walking is one thing I can still do with minimal pain," that she can walk 1-2 miles before having to rest, and that she wears a knee brace when walking. (*Id.* at 26-27.) Plaintiff does ***not*** check off the boxes for walking, sitting, and stair-climbing, which read in context, means that her conditions do ***not*** affect walking, sitting, and stair-climbing.[32] (*Id.* at 26.)

With respect to her hands, Plaintiff states in her Function Report that she only cooks 1 or 2 times a month because her "hands hurt too much to cut, stir etc." (*Id.* at 23.) Plaintiff also reports she cares for her then-90-year-old mother[33] and performs house and yard work, but requires "notes to self & constant pushing of myself due to the pain & fatigue." (ECF No. 9-6 at 21-23.) In describing the limitations on her abilities, Plaintiff states "[m]y hands are the worst and now they have arthritis too." (*Id.* at 26.)

On April 30, 2013, Plaintiff provided information to Alan Berkowitz, M.D. as part of a psychiatric evaluation. (ECF No. 9-7 at 50-53.) Included in the report of this psychiatric evaluation is the following statement that appears to have been made by Plaintiff to Dr. Berkowitz: "I believe that I am disabled from being a CPA but ***I am certainly not disabled from doing any other type of work***." (*Id.* at 51 (emphasis added).)

---

[32] As part of the checklist portion of her Function Report, Plaintiff reports that her conditions affect every mental and physical ability listed except for the following abilities: walking, sitting, talking, hearing, stair-climbing, and seeing. (*Id.* at 26.)
[33] At some point in late April or early May 2015, the record reflects that Plaintiff's mother entered hospice care. (ECF Nos. 9-2 at 43, 52; 9-7 at 127.)

On May 14, 2015, Plaintiff testified at a hearing held before the ALJ. (ECF No. 9-2 at 30-58.) With respect to her cognitive symptoms, she testified that she stopped working as a certified public accountant in 2011 because she was experiencing memory problems concerning the tax laws that she attributes to "fibro fog." (*Id*. at 35-36, 49.) She explained that she experiences problems with memory, concentration, and staying focused and on task, which would be the biggest obstacles to going back to work as an accountant. (*Id*. at 50.) Plaintiff testified that the fibro fog has "only gotten worse" and that she is being treated by a neurologist who both put her on beta blockers to prevent "brain spasming" and issued a report (that Plaintiff testified she left in the car). (*Id*. at 36-37, 46.) Plaintiff owns four rental properties and manages the finances, prepares tax returns, and oversees a contractor who performs the maintenance for those properties. (*Id*. at 47-48, 50.)

Plaintiff receives medication and treatment from a psychologist for anxiety. (*Id*. at 44-46.) Plaintiff testified that she goes out with friends, but experiences anxiety in crowds and when driving. (*Id*. at 48-49.) Plaintiff uses medication and cannabis to help her sleep at night. (*Id*. at 47.) Plaintiff testified that she can be bedridden for two or three days from depression, but that such an occurrence was rare. (*Id*. at 52.)

With respect to her physical symptoms, Plaintiff testified that she experiences migraines and pain from fibromyalgia, a prior foot injury, and her back problems. Her migraines and fibromyalgia cause pain severe enough to render Plaintiff "bedridden" seven to eight times a month and often for a period of "two or four hours" depending on how quickly she takes medication for the pain. (ECF No. 9-2 at 37-38.) Plaintiff sometimes experiences episodes where she is bedridden for two days with a migraine, whereas "[u]sually the fibro goes in a day." (*Id*. at 52.) Plaintiff can perform many of the tasks of independent living, but due to pain Plaintiff attributes at least in part to a prior foot injury, she can only sit comfortably for about an hour, stand for about 15 minutes, and walk "a couple miles . . . easily." (*Id*. at 38-40.) Due to back problems "since the '80's," Plaintiff estimates that the heaviest she can "probably" lift and carry is 25 pounds. (*Id*. at 40.)

///

Plaintiff testified that she has two horses and that, as of early 2014, she receives help in caring for the horses, but can still clean the pens and ride the horses. (*Id*. at 42-43.)

With respect to her hands, Plaintiff testified that she can hold onto items, use a typewriter, and perform many of the tasks of independent living. (*Id*. at 38, 43, 50.) However, she also testified that she experiences constant pain in her hands, usually cannot open jars, and can "hardly write" her name anymore because "there's a lot of pain just to sign your name." (*Id*. at 38, 43-44.) In addition, Plaintiff testified that the only problem she experiences when riding her horses is the constant pain in her hands from arthritis and fibromyalgia. (*Id*. at 43.) Plaintiff testified that on a scale of zero to ten, with zero being no pain, the average hand pain she experiences while medicated for the pain is between a three and four. (*Id*. at 44.)

Plaintiff testified that she has not looked for work because she worries that she "wouldn't be able to show up." (*Id*. at 50-51.)

**C.  Fibromyalgia**

The sufficiency of the ALJ's credibility analysis with respect to Plaintiff's fibromyalgia-related symptoms turns in large part on whether the ALJ considered the unique characteristics of fibromyalgia in analyzing Plaintiff's symptoms.[34] Thus, and as recently summarized in *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017), it is helpful to understand the following about fibromyalgia in the context of this social security disability appeal:

> Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Typical symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue. What is unusual about the disease is that those suffering from it have muscle strength,

---

[34] *Revels v. Berryhill*, 874 F.3d 648, 662, 666-67 (9th Cir. 2017) (reversing the district court's order affirming the denial of supplemental security income and disability insurance benefits in part because "the ALJ did not consider [the claimant] Revels' testimony in light of her fibromyalgia diagnosis").

12

sensory functions, and reflexes that are normal. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms. There are no laboratory tests to confirm the diagnosis.

. . . . [A] person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may fluctuate in intensity and may not always be present); (2) she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) there is evidence that other disorders are not accounting for the pain.

Therefore, diagnosis of fibromyalgia does not rely on X-rays or MRIs. Further, SSR 12-2p recognizes that the symptoms of fibromyalgia wax and wane, and that a person may have bad days and good days. In light of this, the ruling warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider a longitudinal record whenever possible.[35]

### D. Analysis

Citing to case law and Social Security Ruling 12-2p,[36] Plaintiff argues that summary judgment in her favor is warranted in part because the ALJ "essentially discounted" the severity of Plaintiff's fibromyalgia due to a lack of objective evidence despite the fact that there are no objective tests to determine the severity of fibromyalgia. (ECF No. 12 at 5-7.) Plaintiff provides two examples in support of this argument: (1) the ALJ discredited Ms. Cash stating that she was neurologically intact in spite of the fact that neurological findings are not expected in a case involving fibromyalgia; and (2) the ALJ discredited Ms. Cash

---

[35] *Revels*, 874 F.3d at 656-57 (internal citations, alterations, and quotations omitted).
[36] *See* SSR 12-2p, 77 Fed. Reg. 43,640 (July 25, 2012).

because she did not have evidence of atrophy or loss of strength in spite of the fact that atrophy is not expected with fibromyalgia. (ECF No. 12 at 7.)

In response, the Commissioner takes issue with Plaintiff's position. The Commissioner generally argues that the ALJ properly relied on a lack of objective medical evidence corroborating Plaintiff's allegations as one relevant factor in his analysis. (ECF No. 15-1 at 7.) The only fact-specific example provided in support of this argument is the Commissioner's conclusory statement, supported only by a string-cite to various pages of the administrative record, that "the ALJ noted findings upon examination, which included normal range of motion and normal strength[,] contradicted Plaintiff's alleged level of disabling pain." (*Id.*) The Commissioner also argues the ALJ properly relied on other factors to discount Plaintiff's allegations: Plaintiff's daily activities (*id.* at 6), Plaintiff's "conservative" course of treatment (*id.* at 5), and that Plaintiff's pain was well controlled with medication (*id.*). The parties dispute whether the ALJ's analysis of these three factors presented clear and convincing reasons to reject Plaintiff's subjective limitations.

Lack of objective medical evidence cannot be the only reason for discounting a claimant's subjective symptom testimony, but may be a relevant factor for an ALJ to consider in conjunction with other factors.[37] Each of the other factors identified by the ALJ here—Plaintiff's daily activities, "conservative" course of treatment, and that Plaintiff's pain was "'well controlled with meds'" (*see* ECF No. 9-2 at 22-23)—could, if properly addressed and supported, serve as a clear and convincing reason for discrediting a claimant's allegations of disabling symptoms.[38] But, to be clear and convincing, the ALJ

---

[37] *See Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

[38] Activities of daily living may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). A conservative course of treatment also may serve as a basis for discrediting a claimant's allegations of disabling symptoms. *See*, *e.g.*, *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (treatment with over-the-counter pain medication is "conservative treatment" sufficient to discredit a claimant's testimony regarding allegedly disabling pain). Further, "[i]mpairments that can be controlled

14

must specify which of the claimant's complaints are contradicted by which clinical observations.[39] Unfortunately, as to each of these factors, the Court is unable to determine whether the ALJ applied the proper legal standard in reaching his credibility determination. Specifically, the ALJ's credibility determination is not clear and convincing for two reasons: (1) the ALJ failed to sufficiently identify which disabling effects he finds to be undermined by the record; and (2) the ALJ failed to articulate his consideration of fibromyalgia's unique symptoms and diagnostic methods in concluding evidence undermined Plaintiff's statements.[40]

There are four "statements" of Plaintiff that the ALJ generally references within his credibility analysis of Plaintiff's symptoms caused by fibromyalgia: (1) she experiences "severe pain due to fibromyalgia" (ECF No. 9-2 at 22); (2) "she has difficulty with her hands" (*id.*); (3) she alleges "disabling pain and weakness" (*id.*); and (4) she "complained of memory problems" (*id.* at 23). From there, the ALJ decision provides little to no guidance as to which disabling effects the ALJ believes to be undermined by which aspects of the record. Nor does it make clear whether the ALJ considered fibromyalgia's unique symptoms and diagnostic methods in concluding certain disabling effects due to fibromyalgia were undermined by the record. The Court would be speculating as to whether the ALJ intended to discredit statements about fatigue, statements that Plaintiff is bedridden up to eight times per month, statements about experiencing migraine headaches

---

effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

[39] *Laborin*, 867 F.3d at 1155 (where there is no evidence of malingering, "the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying '*which* testimony [the ALJ] found not credible' and explaining '*which* evidence contradicted that testimony'"); *Brown–Hunter*, 806 F.3d at 489, 494 (same); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) (holding that an ALJ's determination that a claimant was not credible because his "complaints are 'inconsistent with clinical observations' . . . . could satisfy the requirement of a clear and convincing reason for discrediting a claimant's testimony, except that the ALJ did not specify what complaints are contradicted by what clinical observations.").

[40] *Revels v. Berryhill*, 874 F.3d 648, 662, 666-67 (9th Cir. 2017) (reversing the district court's order affirming the denial of supplemental security income and disability insurance benefits because "the ALJ did not consider [the claimant] Revels' testimony in light of her fibromyalgia diagnosis").

once a week, statements about enduring constant pain in her hands and body, statements about suffering from severe pain from the simple activity of holding a pen, statements rating her hand pain to be between and a three and a four on a scale of zero to ten, and/or statements that she suffers from anxiety and depression. (*See* ECF No. 9-2 at 35-53; ECF No. 9-6 at 20-23.)

Further, in several portions of his credibility analysis, the ALJ fails to articulate whether he is discrediting Plaintiff's statements about her alleged mental fibromyalgia symptoms (fibro fog, memory loss, and the inability to concentrate or stay on task), physical symptoms (fatigue, generalized pain, hand pain, and migraine headaches), or both.[41] For example, the ALJ stated the following as part of his credibility analysis:

> The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. She has been neurologically intact. The claimant's course of treatment since her alleged disability onset date has generally reflected a conservative approach. She only is being treated for chiropractic treatment for her pain.

(ECF No. 9-2 at 22.) The ALJ does not adequately explain which symptom is undermined by which "type of medical treatment." (*Id.*) The ALJ also does not adequately explain which symptom is undermined by the fact that Plaintiff is "neurologically intact" (*id.*), which is a concerning remark because "[t]here are no laboratory tests for the presence or severity of fibromyalgia."[42] Given the breadth and nature of the symptoms alleged and the disorganized and inadequately articulated credibility analysis before the Court, the Court cannot properly determine whether the ALJ had a valid basis supported by substantial evidence to discount Plaintiff's statements.

---

[41] *See also* § IV.B *supra*.

[42] *Rollins*, 261 F.3d at 855 ("There are no laboratory tests for the presence or severity of fibromyalgia."); *Bishop v. Berryhill*, No. 16cv00741, 2017 WL 4539249, at *2 (E.D. Cal. Oct. 11, 2017) ("The ALJ's citation to clinical findings of mild or controlled symptoms of rheumatoid arthritis and normal neurological findings . . . failed to show that claimant did not have pain and limitations due to fibromyalgia.").

16

As articulated, the ALJ's credibility analysis constitutes legal error that is not harmless. For example, the RFC assessed for Plaintiff did not include any mental limitations due to fibromyalgia. Whether and why the ALJ discredited statements about Plaintiff's alleged mental symptoms due to fibromyalgia, such as being unable to stay on task, is material to her claim of disability. Indeed, at the ALJ hearing, a vocational expert testified that Plaintiff would ***not*** be able to sustain employment if the ALJ's RFC determination for Plaintiff was modified to include the limitation that "because of concentration problems, this person would be off-task at least 15% of the day." (ECF No. 92 at 56.) Because, the Court is left to speculate whether the ALJ discredited Plaintiff's statements demonstrating she is off-task at least 15% of the day, or credited them, but failed to include that mental limitation in the RFC assessed for Plaintiff, the ALJ erred and the error is not harmless.

The ALJ generally discredits Plaintiff's "complain[t] of memory problems," but only one citation to the record is provided to identify these complaints – Exhibit 2F, a 35-page exhibit containing Family Practice Progress Notes. (ECF No. 9-2 at 23.) The ALJ does not cite to the various other places in the record, such as Plaintiff's Function Report, where Plaintiff describes her alleged cognitive symptoms. (*See* ECF No. 9-6 at 19-29.) Moreover, the ALJ does not state whether he credits or discredits Plaintiff's claims of other mental limitations due to fibromyalgia besides memory loss. In addition, to the extent the ALJ's analysis was intended to address alleged mental limitations due to fibromyalgia, the ALJ failed to articulate whether he considered Plaintiff's statements and medical evidence about her cognitive symptoms in light of her fibromyalgia's unique symptoms and diagnostic methods.

In sum, the ALJ's opinion does not meet the clear and convincing standard because the ALJ fails to both adequately identify which statements he finds not credible and articulate the nexus between those statements of Plaintiff that the ALJ discredits and the evidence that purportedly undermines them in light of fibromyalgia's unique symptoms

///

and diagnostic methods.[43] Because the ALJ appears to have based Plaintiff's disability status in large part on his insufficient credibility analysis, the ALJ committed legal error that is not harmless, and thus, warrants remedy.

### F. Remand is Appropriate

Plaintiff asks the Court to reverse for the payment of benefits, or in the alternative, remand for the correction of legal errors. (ECF No. 12 at 8.) Defendant maintains the position that the ALJ's decision is "free of harmful legal error." (ECF No. 15-1 at 10.)

When an ALJ commits error that is not harmless, "[t]he decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court."[44] "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."[45] Furthermore, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."[46] On the other hand, "where the record has been fully developed such that further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."[47]

---

[43] *See Brown–Hunter*, 806 F.3d at 494-95 ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [claimant]'s pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony . . . . In sum, we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions."); *Revels*, 874 F.3d at 662, 666-67 (reversing the district court's order affirming the denial of supplemental security income and disability insurance benefits because "the ALJ did not consider [the claimant] Revels' testimony in light of her fibromyalgia diagnosis").
[44] *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).
[45] *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).
[46] *Lewin*, 654 F.2d at 635.
[47] *Benecke*, 379 F.3d at 593. Before remanding a case to the ALJ with instructions to award benefits, three requirements must be met:
> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020.

Here, the ALJ committed legal error that was not harmless, but this is not a case where further administrative proceedings would lack purpose. The ALJ failed to sufficiently articulate his credibility analysis in light of Plaintiff's fibromyalgia diagnosis and binding Ninth Circuit authority. This failure can be remedied on remand.

Further, even if the ALJ decides to credit as true each of Plaintiff's statements about the disabling effects of her impairments and then adjust his residual capacity determination for Plaintiff, the ALJ might still conclude Plaintiff is not disabled, either because she has the residual functional capacity to perform the requirements of her past relevant work as an accountant or because she has the residual functional capacity to perform the requirements of other work that exists in significant numbers in the national economy. Moreover, the ALJ may opt to further develop the record, such as probing into her basis for what appears to be her statement from 2013 that, "I believe that I am disabled from being a CPA but *I am certainly not disabled from doing any other type of work*." (ECF No. 9-7 at 50-53 *Id*. at 51 (emphasis added).) Therefore, remand for further proceedings is the appropriate remedy.

## V. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** the following:

(1) Plaintiff's motion for summary judgment (ECF No. 12) be **GRANTED IN PART AND DENIED IN PART** and that this case be **REMANDED** for further proceedings consistent with this Report and Recommendation;[48]

(2) The Commissioner's cross-motion for summary judgment (ECF No. 15) be **DENIED**.

IT IS HEREBY ORDERED that any written objections to this Report and Recommendation must be filed with the Court and served on all parties **no later than**

---

[48] The Court recommends that Plaintiff's motion be denied insofar as she seeks reversal and an award of benefits.

**February 9, 2018**. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties no later than **February 16, 2018**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.[49]

Dated: January 26, 2018

Hon. Jill L. Burkhardt
United States Magistrate Judge

---

[49] *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).